## STATE OF CONNECTICUT *v.* SHERMAN ADAMS
## (12303)

Dupont, C. J., and Landau and Hennessy, Js.

Argued February 6—decision released August 8, 1995

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Joseph T. Corradino,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of twelve counts of burglary in the second degree in violation of General Statutes § 53a-102 (a),[1] six counts of larceny in the first degree in violation of General Statutes §§ 53a-119[2] and 53a-122 (a) (2),[3] four counts of larceny in the third degree in violation of General Statutes §§ 53a-119 and 53a-124 (a) (2),[4] one count of larceny in the fourth degree in violation of General Statutes §§ 53a-119 and 53a-125 (a),[5] and six counts of stealing a firearm in violation of General Statutes § 53a-212 (a).[6]

---

[1] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

[2] General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[3] General Statutes § 53a-122 (a) provides in pertinent part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

[4] General Statutes § 53a-124 (a) provides in pertinent part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds one thousand dollars . . . ."

[5] General Statutes § 53a-125 (a) provides: "A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."

[6] General Statutes § 53a-212 (a) provides: "A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm, as defined in subdivision (19) of section 53a-3."

The defendant claims that the trial court improperly (1) (a) denied his motion for judgment of acquittal as to four counts of larceny in the third degree and (b) exercised its discretion pursuant to Practice Book § 624[7] in permitting the state to amend the information as to those four counts, (2) violated his right against double jeopardy under the Connecticut constitution by permitting his conviction of six counts of theft of a firearm and two counts of larceny in the first degree for the theft of the same firearms, (3) instructed the jury on the element of value as to the larceny counts, and (4) admitted into evidence a written statement of a state's witness.

The jury could reasonably have found the following facts. Between October 15, 1989, and November 15, 1991, twelve residences were burglarized, one in the town of Stratford and eleven in the town of Fairfield. Property was taken from all but one residence in the course of these crimes. On February 4, 1992, Curtis Wilson gave information, including a written statement, to the Fairfield police that implicated the defendant in all of the Fairfield burglaries. In a subsequent written statement given, on March 25, 1992, Wilson admitted that he had been involved in those burglaries with the defendant.

At trial, Wilson, the sole witness linking the defendant to the crimes, testified regarding the Fairfield burglaries, as well as the Stratford burglary. The police obtained no fingerprints of the defendant or Wilson at the crime scenes. The defendant testified that he was

---

[7] Practice Book § 624 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

not involved in any of the burglaries and that Wilson, a former friend, had falsely implicated him.

## I

In his first claim, the defendant asserts that the trial court improperly denied his motion for judgment of acquittal as to four counts of larceny in the third degree and improperly permitted the state to file an amended information as to those four counts in violation of Practice Book § 624 and his due process right to notice of the charges against him.

Before we begin our analysis, it is important to outline the procedural history of this case. The state originally filed a thirty count long form information against the defendant. Four of the counts alleged larceny in the third degree in violation of General Statutes §§ 53a-119 and 53a-124 (a) (1).[8] While § 53a-124 (a) (1) requires that the object of the larceny be a motor vehicle valued at $5000 or less, the state's case against the defendant on each of the four counts was tried on the premise that property other than a motor vehicle, valued at less than $5000, had been taken. Subdivision (2), not (1), of § 53a-124 (a) requires that the object of the larceny be property valued at more than $1000. See footnote 4.

At the close of the state's case-in-chief, the defendant moved for judgment of acquittal as to the four counts, claiming that the state's evidence did not conform to the charged offenses. The trial court denied the defendant's motion.[9] Contemporaneously, the state

---

[8] General Statutes § 53a-124 (a) provides in pertinent part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less . . . ."

[9] The defendant also moved for judgment of acquittal as to a count of larceny in the sixth degree in violation of General Statutes §§ 53a-119 and 53a-125b (a), and the trial court granted that motion.

moved to amend the original information, claiming that a scrivener's error had caused mistakes therein. The trial court denied the motion as presented, but ordered the state to file an amended information changing the statutory citations in the four pertinent counts from § 53a-124 (a) (1) to § 53a-124 (a) (2).[10] Citing Practice Book § 622,[11] the trial court ruled that the amendment was proper because the defects in the original information were "minor" and because there was no actual defect in the substance of what the defendant was alleged to have committed. The trial court found that there had been a "mis-citation" of the statutory subdivision and further stated that "there's certainly no prejudice to the defendant whatsoever here. He has been placed on notice since early on of exactly what he was charged with, and what the state intended to prove."

Both the state and the defendant ask us to decide if the trial court properly exercised its discretion under Practice Book § 624 in permitting the state to amend

[10] In the original long form information, each of the four counts at issue read: "Larceny in the Third Degree [The deputy assistant state's attorney] charges . . . the said Sherman Paul Adams did commit larceny of the property of [name of property owner], *valued in excess of Five Thousand Dollars ($5,000.00), in violation of Sections 53a-119 and 53a-124 (a) (1) of the Connecticut General Statutes.*" (Emphasis added.)

In the amended long form information, each of the four counts reads: "Larceny in the Third Degree [The deputy assistant state's attorney] charges . . . the said Sherman Paul Adams did commit larceny of the property of [name of property owner], *valued in excess of One Thousand Dollars ($1,000.00), in violation of Sections 53a-119 and 53a-124 (a) (2) of the Connecticut General Statutes.*" (Emphasis added.)

[11] Practice Book § 622 provides: "The judicial authority may order at any time such relief as is required to remedy any defect, imperfection or omission in the indictment, information, or complaint, including the following:

"(1) Any matter of form;

"(2) Any miswriting, misspelling, or improper English;

"(3) Any misuse of a sign, symbol, figure, or abbreviation; or

"(4) Any omission of the true name or any misspelling of the name of the defendant."

the information after the close of the state's case. While the motion to amend the information was couched in terms of Practice Book § 624, however, the transcript is quite clear in revealing that the basis of the trial court's ruling was Practice Book § 622. The court stated, "I just want to make sure that you understand, and I do not find this to be a substantive amendment under [Practice Book §] 624. I'm finding this under [Practice Book §] 622." Regardless of whether our analysis is based on § 622 or § 624, we conclude that the trial court properly permitted the amended information.

The trial court may permit the state, after the start of the trial, to file an amended information to conform to the evidence. See Practice Book § 624; *State* v. *Secore*, 194 Conn. 692, 699, 485 A.2d 1280 (1984); *State* v. *Mazzetta*, 21 Conn. App. 431, 438, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990). Also, Practice Book § 622 permits the trial court at any time to order such relief as is required to remedy any defect, imperfection or omission in an information. These decisions are "within the court's sound discretion and [are] subject to reversal only for an abuse of that discretion. *State* v. *Ramos*, [176 Conn. 275, 276, 407 A.2d 952 (1978)]. A substitute information may not prejudice the defendant's due process rights. *State* v. *Vaughn*, 20 Conn. App. 386, 389–90, 567 A.2d 392 (1989). The defendant must provide a specific showing of prejudice resulting from the state's delay in providing notice of the charge against which [he] must defend. *State* v. *Ramos*, supra, 279–80; *State* v. *Waterman*, 7 Conn. App. 326, 335, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986)." *State* v. *Mazzetta*, supra, 438.

The trial court's discretion pursuant to Practice Book § 624 is limited only by the requirement that no additional or different offense may be charged in and no substantive rights of the defendant may be prejudiced

by an amended information. "Practice Book § 624 is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. *State* v. *Jacobowitz*, 182 Conn. 585, 590, 438 A.2d 792 (1981)." *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993). For this reason, when determining whether an amended information has charged different offenses for the purposes of § 624, "the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense." Id.

The defendant argues that the amendment to the information was improper because it permitted the state to charge a different offense. In support of this claim, he first posits that the original information actually charged four counts of larceny in the second degree in violation of General Statutes § 53a-123 (a) (2),[12] in that each count alleged that the defendant had taken property "valued in excess of Five Thousand Dollars." Because the value element of § 53a-123 (a) (2) differs from that of the substituted § 53a-124 (a) (2), the defendant maintains that the trial court permitted the substitution of a different offense.

The state responds that it intended to charge the defendant with four counts of larceny in the third degree pursuant to § 53a-124 (a) (2), *not* with either larceny in the second degree pursuant to § 53a-123 (a) (2) or larceny in the third degree in violation of § 53a-124 (a) (1). This is evident, the state contends, from the fact that each disputed count in the original information was entitled "LARCENY IN THE THIRD DEGREE." Moreover, the statute cited in each count

---

[12] General Statutes § 53a-123 (a) provides in pertinent part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds five thousand dollars."

was § 53a-124, which pertains to larceny in the third degree. Also, the state's evidence on these counts established that property other than motor vehicles valued at less than $5000 had been taken from the residences. The state argues, as it did before the trial court, that the prosecutor mistakenly cited subdivision (1) of § 53a-124 (a), rather than subdivision (2), due to a recent revision in the statute.[13] Also, a scrivener's error had caused the counts to read "valued in excess of five thousand dollars" rather than "valued in excess of one thousand dollars." It is evident from the record that the trial court accepted the state's argument and considered the amendment to the information a technical rather than a substantive change. The trial court, therefore, allowed the substitution of no new or different offense.

This does not end our inquiry. We must determine whether the defendant was prejudiced in order to conclude whether the court abused its discretion in permitting the change. Even if the defendant had read the original four counts as charging him with larceny in the second degree in violation of § 53a-123 (a) (2), as he now contends, we must conclude that he was not prejudiced. The substituted offense of larceny in the third degree in violation of § 53a-124 (a) (2) is a lesser included offense of what the defendant assumed was the original offense. See *State* v. *Cole*, 8 Conn. App. 545, 513 A.2d 752 (1986). Any property "valued in excess of five thousand dollars" is also property "valued in excess of one thousand dollars." Therefore, a

---

[13] The state represents that General Statutes (Rev. to 1987) § 53a-124 (a) (1) previously proscribed larceny where "the value of the property or service exceeds one thousand dollars." In 1988, subsection (a) of § 53a-124 was amended by Public Acts 1988, No. 88-170, to add property consisting of a motor vehicle, the value of which is $5000 or less. That motor vehicle section became the new subdivision (1) of subsection (a), while the former subdivision (1) (property valued in excess of $1000) became subdivision (2) of subsection (a).

defendant who is on notice that he is charged with stealing in excess of $5000 worth of property is automatically on notice that he is accused of stealing in excess of $1000 worth of property. See *State* v. *Cochran*, 191 Conn. 180, 192–93, 463 A.2d 618 (1983).

In the alternative, the defendant argues that, even if the original four counts did charge larceny in the third degree pursuant to § 53a-124 (a), the change from subdivision (1) to (2) nonetheless permitted the state to allege a different offense. The defendant claims that the property required for a violation of § 53a-124 (a) (1), i.e., a motor vehicle, is unique as opposed to the generic "property" required in the substituted offense.

Subdivision (1) of § 53a-124 (a) differs in one relevant respect from subdivision (2); it requires that the property at issue be a motor vehicle. Otherwise, both subdivisions require that the subject of the larceny be property with a value of $5000 or less. For the purposes of § 624, we must conclude that the two subdivisions merely describe two different methods of committing the same substantive offense, i.e., larceny in the third degree. As stated previously, the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense. *State* v. *Tanzella*, supra, 226 Conn. 608. The defendant was sufficiently apprised that he was being charged with larceny in the third degree. Moreover, his defense at trial was that he was not involved in any of the larcenies. He did not dispute the fact that the larcenies had occurred and he did not challenge the value or types of property taken.

Consequently, we conclude that the amended information adequately notified the defendant of the charges against which he was required to defend. It did not charge additional or different offenses. See *State* v.

*Tanzella,* supra, 226 Conn. 601; *State* v. *Secore,* supra, 194 Conn. 692; *State* v. *Wallace,* 181 Conn. 237, 435 A.2d 20 (1980); *State* v. *Sullivan,* 11 Conn. App. 80, 525 A.2d 1353 (1987). Because the amendment to the information was proper, the trial court's denial of the defendant's motion for judgment of acquittal was also proper.

## II

The defendant next claims that the state constitutional prohibition against double jeopardy was violated when the trial court sentenced him pursuant to the jury verdicts of guilty of six counts of stealing a firearm in violation of § 53a-212 (a) and two counts of larceny in the first degree in violation of § 53a-122 (a) (2).[14]

The jury found the defendant guilty of unlawfully entering one residence (seventh count charging burglary in the second degree), stealing property therefrom (eighth count charging larceny in the first degree) and stealing four firearms therefrom (ninth through twelfth counts). The jury also found him guilty of unlawfully entering another residence (twentieth count alleging burglary in the second degree), stealing property therefrom (twenty-first count alleging larceny in the first degree) and stealing two firearms therefrom (twenty-second and twenty-third counts). The trial court imposed separate sentences for the burglary, the larceny and each theft of a firearm at each residence.

The defendant acknowledges that in *State* v. *Roy,* 34 Conn. App. 751, 643 A.2d 289 (1994), rev'd on other grounds, 233 Conn. 211, 658 A.2d 566 (1995), we held that convictions for both stealing a firearm and larceny in the first degree involving theft of the same firearm

---

[14] The defendant's claim implicates that aspect of double jeopardy protection that prohibits multiple punishments for the same crime. *State* v. *Anderson,* 212 Conn. 31, 35, 561 A.2d 897 (1989); *State* v. *Raymond,* 30 Conn. App. 606, 609, 621 A.2d 755 (1993).

did not violate double jeopardy protection under the federal constitution. He argues that the Connecticut constitution, article first, §§ 8 and 9, entitles him to greater protection against double jeopardy than does the federal constitution. In *State* v. *Laws*, 37 Conn. App. 276, 655 A.2d 1131 (1995), we rejected this argument.

In *Laws*, we stated that "[t]here is no textual ban on double jeopardy in the Connecticut constitution; instead the state constitutional prohibition on double jeopardy is implied through the due process provisions of article first, §§ 8 and 9. *State* v. *Lonergan*, [16 Conn. App. 358, 363–64, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990)]. It follows that there is no textual or historical reason for interpreting our own constitutional double jeopardy bar differently from the federal constitutional bar. Furthermore, when a federal double jeopardy claim is raised in the course of a single prosecution, most federal and state courts, including Connecticut courts, address the claim under the federal constitution through straightforward application of the *Blockburger* rule.[15] See, e.g., *State* v. *McCall*, [187 Conn. 73, 89–90, 444 A.2d 896 (1982)]; *State* v. *Ortiz*, [15 Conn. App. 749, 751, 546 A.2d 338, cert. denied, 209 Conn. 820, 551 A.2d 757 (1988)]." *State* v. *Laws*, supra, 37 Conn. App. 292.

"Prior holdings of Connecticut courts support a finding that the implied double jeopardy clause of our own constitution is coextensive with that found in the fed-

---

[15] In *Blockburger*, the Supreme Court set forth the test: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

eral constitution. 'Our Supreme Court has repeatedly held that, as a general rule, "the due process clauses of both the United States and Connecticut constitutions have the same meaning and impose similar limitations." *State* v. *Brigandi*, 186 Conn. 521, 542, 442 A.2d 927 (1982); *Caldor's Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 314, 417 A.2d 343 (1977).' *State* v. *Leroux*, 18 Conn. App. 223, 229–30, 557 A.2d 1271, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989). Furthermore, this court has noted that in an independent analysis of a state constitutional provision, departure from federal constitutional precedent is usually justified only 'where the United States Supreme Court "has created exception to or deviated from rules previously enunciated by it . . . ." ' *State* v. *Miller*, 29 Conn. App. 207, 222–23, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993), quoting *State* v. *DeFusco*, 27 Conn. App. 248, 256, 606 A.2d 1 (1992), aff'd, 224 Conn. 627, 620 A.2d 746 (1993). When we find that our citizens have relied on an understanding of their constitutional rights that is more expansive than that afforded under a recent interpretation of the federal constitution by the United States Supreme Court, we will be inclined to interpret our state constitution as affording greater protection to preserve those rights. See, e.g., *State* v. *Oquendo*, 223 Conn. 635, 646–52, 613 A.2d 1300 (1992). Otherwise, we will continue to follow the persuasive analysis of the United States Supreme Court. *State* v. *Miller*, supra, 222–23.

"The *Blockburger* rule had its genesis in *Gavieres* v. *United States*, 220 U.S. 338, 31 S. Ct. 421, 55 L. Ed. 489 (1911). Over the last fifty years, it has consistently been applied by Connecticut courts in analyzing double jeopardy claims arising from multiple convictions and punishments imposed in a single trial. See, e.g., *State* v. *McCall*, supra, 187 Conn. 89–90; *State* v. *Ortiz*, supra, 15 Conn. App. 751. Connecticut's citizens have

no realistic expectation that they will have these double jeopardy claims scrutinized by a test that is more protective than the *Blockburger* test." *State* v. *Laws*, supra, 37 Conn. App. 294–95. Therefore, as in *Laws*, we decline the defendant's invitation to find that our state constitution affords any greater due process rights than those afforded under the federal constitution's double jeopardy clause.

## III

In his third claim, the defendant asserts that the trial court improperly instructed the jury concerning the element of value in the larceny counts. Specifically, he argues that the trial court failed to instruct that value is a necessary element of larceny and is required to be proven beyond a reasonable doubt by the state. He also contends that the court improperly put limits on the value of the property necessary to establish the degree of larceny charged in each count.

The defendant did not except to the instructions at trial and seeks review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[16] As to his argument that the trial court failed to instruct that value is a necessary element, thereby depriving him of his right to due process, we conclude that the third prong of *Golding* remains unfulfilled.[17]

---

[16] Under *State* v. *Golding*, supra, 213 Conn. 239–40, the defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

[17] In pertinent part, the court instructed: "If you find the defendant guilty of larceny, in order to determine the grade of the offense, that is, larceny in the first degree, the second degree or so forth, with respect to each count, you may add or aggregate the value of property or services stolen with respect to each count. You can only add amounts in each count where thefts

" 'In reviewing a constitutionally based challenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. *State* v. *Snook*, 210 Conn. 244, 275–76, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Bailey*, 209 Conn. 322, 338, 551 A.2d 1206 (1988).' *State* v. *Ober*, 24 Conn. App. 347, 358, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 26 (1991). 'The charge is not to be judged in artificial isolation from the overall charge. *State* v. *Kelly*, 23 Conn. App. 160, 164, 580 A.2d 520 (1990), cert. denied, 216 Conn. 831, 583 A.2d 130, cert. denied, 449 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991).' *State* v. *Falcon*, 26 Conn. App. 259, 269, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992). An error in the charge requires reversal only if, in the context

---

were committed pursuant to one scheme or course of conduct, whether from the same or several persons. . . . The statute sets forth the standard you are to use in considering the value of the property or service involved. The value's important in a minute in determining the grade of the larceny that is charged. Value here means the market value of the property at the time and place of the crime. Market price means the price that would in all probability result from fair negotiations between willing buyers and sellers at the time and place of the crime. The probability being based upon the evidence in this case. In this case evidence has been presented [that] the items claimed to have been stolen had a retail price. If you can determine the price the property sold for at the time and place of the crime, that is the controlling value. If the market price cannot be determined then you should consider the replacement cost of the goods within a reasonable time after the crime. And with respect to the different sites of the crimes and the different witnesses some testified to one, some have testified to another. It is for you to make that determination. If you cannot determine using these standards that the state has proved the value of the property or services beyond a reasonable doubt then you must set the value at less than $250."

Following this instruction, the trial court explained the value amounts required for each degree of larceny charged, and for the lesser included offenses of larceny in the fifth and sixth degree.

of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Bailey*, supra, 338.

" 'While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury.' *State* v. *Channer*, 28 Conn. App. 161, 172, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992)." *State* v. *Turmon*, 34 Conn. App. 191, 197–98, 641 A.2d 138 (1994). Our review of the whole charge indicates that the jury was adequately instructed on the element of value and that there is no reasonable possibility that the jury was misled by the charge. The trial court did not fail to instruct the jury on the element of value for the various degrees of larceny with which the defendant was charged. Nor did the court fail to instruct that the state had the burden of proof beyond a reasonable doubt, and that the jury had to find the facts supporting the convictions beyond a reasonable doubt. The defendant has simply attacked the adequacy of a portion of the language that the trial court used in conveying these principles to the jury, language that at the time of trial he did not perceive as so damaging as to require an exception or request for an additional instruction. See *State* v. *Sullivan*, 11 Conn. App. 80, 86, 525 A.2d 1353 (1987). When the instructions are reviewed as a whole, as they must, it is evident that they adequately relate that value is a necessary element of larceny, which the state must prove beyond a reasonable doubt. The alleged constitutional violation, therefore, does not clearly exist and did not clearly deprive the defendant of a fair trial.

The defendant also challenges for the first time on appeal the court's language that he contends put limits on the value necessary to establish the various degrees of larceny. This unpreserved claim, however, fails to satisfy the second prong of *Golding*. Our statutory

scheme does define each degree of larceny by specifying a value amount. See *State* v. *Salz*, 8 Conn. App. 125, 141–42, 512 A.2d 921, cert. denied, 201 Conn. 807, 515 A.2d 380 (1986). The defendant claims that the trial court's charge, by placing value limits on the degrees of larceny at issue, precluded the jury from finding him guilty of a lesser included offense on each count of larceny. The defendant fails to recognize, however, that he has no fundamental constitutional right to a jury instruction on lesser included offenses, which are " 'purely a matter of our common law.' " *State* v. *Thomas*, 205 Conn. 279, 282, 533 A.2d 553 (1987); see also *State* v. *McIntosh*, 199 Conn. 155, 158, 506 A.2d 104 (1986); *State* v. *Whistnant*, 179 Conn. 576, 581, 427 A.2d 414 (1980). Thus, his unpreserved challenge to these instructions is not one of constitutional magnitude. We therefore decline to review it.

## IV

Finally, the defendant claims that the trial court abused its discretion when it admitted into evidence a written statement given to the police by Wilson. The defendant posits that because Wilson's credibility was essential to the defendant's conviction, the trial court's admission of the statement into evidence was a harmful abuse of discretion.

The state presented the testimony of Detective Daniel Hallama and Detective Peter Bravo of the Fairfield police department, who testified that they were unable to solve the crimes until Wilson came forward and implicated the defendant and later himself. Both testified that, in Wilson's first statement of February 4, 1992, he identified the defendant as the burglar and later, in a second statement on March 25, 1992, he admitted that he also was involved in the burglaries. On cross-examination, the defendant asked the detectives about the circumstances surrounding each of Wil-

son's statements, his alleged motive in implicating the defendant and the fact that he did not implicate himself until he gave the second statement.

Wilson, testifying for the state as to the circumstances surrounding the burglaries, identified the residences, explained the methods of entry and, to some extent, described the property taken from each residence. On cross-examination, the defendant questioned Wilson about the fact that, when the police first interviewed him, he had said that he had nothing to do with the burglaries. The first written statement, which Wilson acknowledged that he had made under oath, was then admitted into evidence as a full exhibit.

Upon further cross-examination by the defendant, Wilson testified that he had given the second written statement, in which he admitted his participation in the crimes, in return for immunity from prosecution. On redirect, the state questioned Wilson about the second statement and then offered that statement as a prior consistent statement. Overruling the defendant's objection, the trial court admitted the second statement on the grounds that it was relevant, probative and was issued within a short time of the first statement.

Assuming, arguendo, that the defendant has met his burden of showing an improper exercise of the trial court's discretion in admitting the statement into evidence, we conclude that the defendant has nonetheless failed to sustain his burden of proving that such evidentiary impropriety was harmful. See *State* v. *Dolphin*, 178 Conn. 564, 572, 424 A.2d 266 (1979). Before the statement was admitted into evidence, the jury was already well aware that Wilson's two statements differed and that he had changed his story after obtaining immunity from prosecution. On both direct and cross-examination, Hallama, Bravo and Wilson had each testified that Wilson gave two statements to the

police and that he had admitted involvement in the crimes only in the second statement. The fact that Wilson gave the second statement in return for immunity also was presented to the jury. Even if the second statement was not properly admitted, it was cumulative to evidence already presented to the jury without objection. Also, the trial court gave a cautionary instruction to the jury concerning the status of Wilson's testifying as an accomplice-witness. For these reasons, we conclude that any error was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.