*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0330**

State of Minnesota,
Respondent,

vs.

Alfred Smith, Jr.,
Appellant.

**Filed January 26, 2015
Affirmed
Chutich, Judge**

Olmsted County District Court
File No. 55-CR-13-304

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County
Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special
Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Stauber, Judge; and Chutich,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

The district court convicted appellant Alfred Smith Jr. of two counts of second-

degree burglary, one count of third-degree burglary, and one count of receiving stolen

property after a bench trial. On appeal, Smith challenges the sufficiency of the evidence to support his three burglary convictions and asserts that his conviction for receiving stolen property should be reversed because he never waived his right to a jury trial on the amended charge. Because the circumstantial evidence is sufficient to support Smith's burglary convictions and because the district court did not err in convicting Smith of the included offense of receiving stolen property, we affirm.

**FACTS**

Smith's convictions arise from a car break-in and a later series of burglaries that occurred over the 2012 Labor Day weekend in Rochester. Sometime during the night of July 18, 2012, or the early-morning hours of July 19, 2012, a car owned by victim S.M. was broken into when it was parked outside of a Rochester hotel. S.M. sold jewelry for a living, and she noticed that a large amount of her jewelry was missing, along with her purse, $300 in cash, and supplies and tools that she uses to make jewelry. S.M. estimated that approximately $1,000 worth of personal jewelry and between $10,000 and $11,000 in total inventory were stolen.

On September 3, 2012, victim D.J. reported that her Rochester home was burglarized over the Labor Day weekend. D.J. left her home on approximately August 29, to visit her mother in Illinois and, when she returned on September 3, she noticed that many items were missing from her home. Several pieces of jewelry, a Sentry safe containing personal documents, gemstones, antique silverware, a digital camera, a Barack Obama coin, and approximately $50 in cash were missing from D.J.'s home.

2

On the same day, victim A.M. reported that her Rochester home was burglarized that afternoon. A.M. shared the home with B.B. and M.N., and they reported that a 55-inch television, a gaming console, cameras, a tablet, and a laptop computer were missing from their home.

The following morning, on September 4, 2012, T.B., the owner of the Rochester Tennis Center, reported that his business was burglarized during the night. T.B. noticed that the cash register was tipped over and file cabinets were rifled through. Two cash bags and some coinage from the register were missing.

Between August 30 and September 4, 2012, Smith resided at the Bell Tower Inn in Rochester. The Bell Tower Inn was located between two and five blocks from the three locations that were burglarized over the Labor Day weekend. On September 4, 2012, Smith requested that he be moved from one room to another at the hotel. After Smith left his original room, hotel cleaning personnel found a garbage bag in the room containing documents that did not belong to Smith. A passport belonging to D.J., paperwork belonging to the Rochester Tennis Club, sterling silverware, and numerous other documents that were not in Smith's name were found in the garbage bag. After seeing the bag's contents, hotel personnel called the police.

Officer James Kenison inspected the contents of the garbage bag and determined that the documents and items were stolen. Officer Kenison then encountered Smith in the hotel and arrested him on an unrelated charge. Upon his arrest, Officer Kenison searched Smith and examined a large bag that Smith was carrying. An initial inspection revealed that the bag contained cell phones, cameras, laptops, and power cords. When the bag was

3

later examined more thoroughly by the police, they found a pair of gloves and a flashlight. The cameras in the bag belonged to the burglarized homeowners D.J. and B.B.

Police obtained a search warrant for Smith's second hotel room. The search revealed numerous items that had been reported stolen during the home burglaries and car theft: flash drives and jewelry taken from S.M.'s car; silverware, the Sentry safe, the Barack Obama coin, and numerous documents taken from D.J.'s home; and a camera, tablet, laptop, and gaming console taken from B.B., A.M., and M.N.'s home. In addition, police found documents and checks taken from the Rochester Tennis Club.

The state charged Smith with two counts of second-degree burglary for the two burglaries of the homes; one count of third-degree burglary for the burglary of the tennis center; and one count of felony theft regarding the stolen jewelry from the car. *See* Minn. Stat. §§ 609.582, subds. 2(a)(1), 3, and 609.52, subd. 2(1) (2012).

Smith waived his right to a jury trial, and a four-day court trial was held. Numerous law enforcement and victim witnesses testified about what was stolen and what property was recovered in Smith's possession. Smith waived his right to remain silent and testified in his own defense. He claimed that the stolen property was in his hotel room partly because a man named Mali brought it there. He stated that he bought the laptop, some jewelry, silverware, and a camera from Mali, but was unable to afford the 55-inch television that Mali wanted to sell him. Smith further testified that he received the safe from Mali, but the safe contained passports and birth certificates that he did not want, so he discarded them. Smith further claimed that he found some of the

4

property on Craigslist or at thrift stores and admitted that he knew the items he purchased were stolen. He stated that he found the papers and blue money bags from the tennis club in a dumpster behind a Marriot. Smith admitted that he had stolen a bike before the dates of the burglaries, but he insisted that he did not commit "heavy" crimes, like breaking into homes or selling narcotics.

On October 2, 2013, the district court issued its verdict, convicting Smith of the three burglary counts and an amended count of receiving stolen property, rather than the initial charge of felony theft. Smith now appeals.

## D E C I S I O N

### I.     Sufficiency of the Evidence

Smith argues that the evidence is insufficient to support the district court's verdict for each of the three burglary convictions. We disagree.

When evaluating the sufficiency of the evidence, "we review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a [factfinder] could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306–07 (Minn. 2014) (quotation omitted). We "view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Chavarria-Cruz*, 839 N.W.2d 515, 519 (Minn. 2013) (quotation omitted). If the factfinder, "acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [a] defendant was proven guilty of the offense charged," we will not disturb

the verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (alteration in original) (quotation omitted). This standard applies to court trials as well as jury trials. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011).

Because Smith's burglary convictions were based solely on circumstantial evidence, we apply a heightened standard of review. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). A two-step analysis is applied under the circumstantial-evidence standard. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved. *Id.* "In identifying the circumstances proved, we defer to the [factfinder's] acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* at 598–99 (quotation omitted). Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable." *Id.* at 599 (quotation omitted). The circumstantial evidence is viewed as a whole, not as isolated facts. *Id.*

Under the first step of the circumstantial-evidence test, the state proved the following circumstances. Both burglarized homes and the burglarized business were within a few blocks of the hotel where Smith stayed over the Labor Day weekend, and each burglary occurred during the holiday weekend. In fact, two of the burglaries occurred in the morning and early evening of September 3. On the morning of September 4, 2012, only hours after two of the burglaries occurred, Smith possessed property stolen in each of the three burglaries. Some of the items found in Smith's possession were worthless to anyone but their owners, including a passport, a birth

6

certificate, and property documents.  In addition, the hotel manager saw Smith carrying the stolen Sentry safe into the hotel during the relevant time frame and identified the safe found in Smith's room as the Sentry safe.  When the police confronted Smith in the hotel, he was carrying a bag that contained numerous stolen electronics and burglary tools, including a flashlight and gloves.

The above proven circumstances are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt."  *Id.* (quotation omitted).  Smith possessed property reported as stolen from both homes and the business, and the nature of several of the items he possessed suggested that they came directly from the burglaries, including passports and birth certificates.  The assortment of items found in Smith's possession, from the electronics to the financially worthless documents, as well as gloves and a flashlight, illustrate Smith's guilt of each of the burglaries.  As the district court aptly stated, "[t]he mishmash of items found in defendant's possession looks like the raw loot that a thief quickly grabbed and made off with."  Moreover, the brief time that passed between the burglaries and the discovery of the stolen items in Smith's possession, along with the close proximity of the hotel to the burglarized homes and tennis center, are consistent with the findings that Smith was the thief.

Smith contends that a reasonable inference can be drawn from his alternate explanation of the events that is inconsistent with finding him guilty of the burglaries, namely that he obtained the valuable stolen items from Mali or from Craigslist, while he found the tennis club's records in a dumpster.  The district court, however, did not find Smith's testimony credible, determining that Smith "demonstrated a flexible approach to

7

the truth -- a looseness with the facts, in which the incriminatory truth is conceded only when and to the extent it is inescapable." *See id.* (providing that the factfinder is in the best position to evaluate the credibility of the evidence and of witnesses even in cases based on circumstantial evidence). Further, we consider it improbable, considering the timing and locations of the break-ins, that Smith came into possession of stolen items from a September 3 burglary by way of Mali, while finding additional stolen items from another September 3 burglary that same evening by fortuitously finding them in a dumpster.

The inferences that Smith requests that we draw from the circumstances proved by the state are not reasonable. The only rational hypothesis that can be drawn from the proved circumstances is that Smith committed the burglaries. The evidence is sufficient to support Smith's convictions for second- and third-degree burglary.

## II.     Included Offense of Receiving Stolen Property

Smith argues that the district court improperly amended the initial theft charge, which arose from the July car break-in and theft of S.M.'s jewelry, to a charge of receiving stolen property because Smith did not waive his right to a jury trial on the amended charge. Under the United States and Minnesota Constitutions, a defendant is entitled to a trial by jury. U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Minn. Const. art. 1, §§ 4, 6. Under Minnesota law, the right to a jury trial attaches when a defendant is charged with an offense that is punishable by incarceration. Minn. R. Crim. P. 26.01, subd. 1(1)(a); *State v. Kuhlmann*, 806 N.W.2d 844, 848 (Minn. 2011). A defendant may waive his right to a jury trial, but the jury-trial waiver must be "knowing,

8

intelligent, and voluntary." *Kuhlmann*, 806 N.W.2d at 848. Whether a criminal defendant has been denied the right to a jury trial is a constitutional question, which we review de novo. *Id.* at 848-49.

Before trial begins, the district court is "relatively free" to allow amendments to the complaint that charges additional offenses. *State v. Caswell*, 551 N.W.2d 252, 254 (Minn. App. 1996) (quotation omitted). "After trial has commenced and jeopardy has attached, however, a [district] court may allow the amendment of a complaint only if no additional or different offense is charged and if the amendment does not prejudice substantial rights of the defendant." *Id.*; *see also* Minn. R. Crim. P. 17.05.

Before trial began, Smith waived his right to a jury trial on the theft charge. Smith argues, however, that this waiver does not extend to the amended receiving-stolen-property charge because the charge was added after jeopardy attached. Our review of the record shows that, from the outset of trial, Smith was willing to admit to receiving stolen property, despite several warnings from the district court of the consequences of doing so.

During opening statements, before direct examination of Smith, and during closing arguments, the offense of receiving stolen property was addressed by the district court and the state. The prosecutor, during closing arguments, stated that he did not believe an amendment to the complaint was necessary because receiving stolen property is an included offense of theft. He nevertheless stated that he would move to add the charge to the complaint if the district court preferred; the district court accepted the amendment. Smith's counsel never raised an objection to a possible amendment of the complaint or to

9

the district court considering receiving stolen property as an included offense, despite having several opportunities to do so.

When a defendant fails to object to an alleged error at trial, including to constitutional challenges, we apply plain-error review. *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008). "In applying plain-error review, we will reverse only if (1) there is error, (2) the error is plain, and (3) the error affected the defendant's substantial rights." *State v. Hayes*, 826 N.W.2d 799, 807 (Minn. 2013). Plain error exists if the error "contravenes case law, a rule, or a standard of conduct." *State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007) (quotation omitted). An error affects substantial rights if it is "prejudicial and affect[s] the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

In the present case, we conclude that the district court did not commit error in allowing the amended charge and convicting Smith of the receiving-stolen-property offense. Minnesota Rule of Criminal Procedure 17.05 allows a court to permit an amendment "at any time before verdict or finding if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced." Further, under Minnesota law, a criminal defendant "may be convicted of either the crime charged or an included offense." Minn. Stat. § 609.04, subd. 1 (2012). An included offense is defined, in part, as "[a] crime necessarily proved if the crime charged were proved." *Id.*, subd. 1(4). "In determining whether an offense is a necessarily included offense, we must look at the elements of the offense rather than the facts of the particular case." *State v. Roden*, 384 N.W.2d 456, 457 (Minn. 1986).

Applying these principles here, we conclude that Smith was not found guilty of an "additional" or "different" offense. Rather, he was convicted of an "included" offense. Under section 609.52, a person is guilty of felony theft if he or she "intentionally and without claim of right . . . *retains possession of* movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(1) (emphasis added). Similarly, a person is guilty of receiving stolen property if he or she "receives, possesses, transfers, buys or conceals any stolen property . . . knowing or having reason to know the property was stolen." Minn. Stat. § 609.53, subd. 1 (2012).

Considering the elements, receiving stolen property is "[a] crime necessarily proved if [theft] were proved." Minn. Stat. § 609.04, subd. 1(4); *see also State v. Lee*, 683 N.W.2d 309, 315 (Minn. 2004) ("Over the years, the words used by the Minnesota legislature to describe the conduct proscribed in the theft and receiving stolen property statutes evolved, overlapping sufficiently so that in a prosecution for receiving stolen property, it is no defense that the defendant was the thief."). As the district court found, a felony theft offense includes *retaining possession* of moveable property without the permission of the owner. Similarly, receiving stolen property requires possession of stolen property. *See State v. Banks*, 358 N.W.2d 133, 136 (Minn. App. 1984) (vacating receiving-stolen-property conviction based on possession because it involved the same act as the theft conviction based on retaining property), *review denied* (Minn. Feb. 27, 1985). Based on the similarity of the elements, receiving stolen property is an included offense of theft.

11

Smith relies on the recent Minnesota Supreme Court case of *State v. Little*, 851 N.W.2d 878 (Minn. 2014), in support of vacating his conviction for receiving stolen property because he did not waive his right to a jury trial on that charge. In *Little*, the defendant was originally charged with third- and fourth-degree criminal sexual conduct. *Id.* at 880. After the defendant waived his right to a jury trial on the charges, the state filed an amended complaint adding a charge of first-degree criminal sexual conduct. *Id.* at 881. The defendant never waived his right to a jury trial on the amended charge of first-degree criminal sexual conduct, and the district court found him guilty of all three counts. *Id.* Our supreme court concluded that when a defendant is charged "with an additional offense after the defendant has waived his or her right to jury trial, the court must obtain a new waiver before dispensing with a jury." *Id.* at 886–87. Specifically, the court determined that it was plain error that affected the defendant's substantial rights when the district court failed to obtain a personal waiver of the defendant's right to a jury trial on the first-degree criminal sexual conduct charge. *Id.* at 887.

The present case, however, is easily distinguished from the scenario presented in *Little* because receiving stolen property is an included offense of theft, not a new and separate charge. In *Little*, the first-degree criminal sexual conduct charge was an additional offense added to the complaint that dramatically increased the penalties that the defendant faced. *See id.* at 886 n.4; *see also* Minn. Sent. Guidelines 4.B (2012). The defendant in *Little* was also convicted of all three charged offenses. *Little*, 851 N.W.2d at 881.

12

Conversely, the district court here did not consider the receiving-stolen-property charge as an additional offense, but rather as an included offense. Smith was found guilty of one of the offenses, not both. Further, felony theft and receiving stolen property are, as the district court determined, "equivalent level felonies," with similar severity levels and penalties, namely presumptive stayed sentences if a person's criminal history score is low. *See* Minn. Sent. Guidelines 4.B. The dramatically increased penalties resulting from the first-degree criminal sexual conduct amendment in *Little* are not a possibility here. Accordingly, Smith's substantial rights were not prejudiced by the amended receiving-stolen-property charge. *See* Minn. R. Crim. P. 17.05.

In addition, the record does not support Smith's argument that the receiving-stolen-property amendment had any effect on his trial tactics. The record shows that Smith was warned at least twice before he chose to testify about the consequences of admitting that he possessed property that he knew was stolen, and that Smith was well aware that the district court was considering an amendment concerning receiving stolen property. Despite these explicit warnings, Smith proceeded to testify and his counsel failed to raise an objection to consideration of the amended charge as a possible amendment or as an included offense.

In sum, because the receiving-stolen-property amendment did not charge Smith with a new or different offense and he did not suffer unfair prejudice as a result, the district court properly convicted Smith of the amended charge.

**Affirmed.**

13