**STATE of Minnesota, Respondent,**

v.

**Jennifer M. CASWELL, Appellant.**

No. C5–96–11.

Court of Appeals of Minnesota.

July 9, 1996.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Timothy E. Marx, St. Paul City Atty., Jill Z. Osterhaus, David W. Hunt, Asst. City Atty., St. Paul, for respondent.

Seldon H. Caswell, Caswell & Associates, P.A., Oakdale, for appellant.

Before SCHUMACHER, P.J., and LANSING and SHORT, JJ.

**OPINION**

SHORT, Judge.

On appeal from a petty misdemeanor conviction for careless driving, Jennifer Caswell argues: (1) the evidence is insufficient to support her conviction; (2) the trial court violated the rule prohibiting amendments to complaints once trial has commenced; (3) the prosecutor acted improperly by tab charging additional offenses in violation of this rule and as punishment for her decision to proceed to trial; (4) she was denied her right to a formal complaint on the new charges; and (5) she was denied effective assistance of counsel as the result of the late charging procedure.

**FACTS**

While driving in St. Paul, Leonard Weinberg collided with a car driven by Caswell. At the scene, a St. Paul police officer cited Caswell for an illegal change of course in violation of Minn.Stat. § 169.19, subd. 4, indicating to her that a car may not cross a double yellow line when making a u-turn. At the pretrial hearing, the charge was certified as a petty misdemeanor and Caswell pleaded not guilty.

After the witnesses were sworn at trial, the court granted the prosecutor's motion to tab charge two additional offenses, illegal u-turn under Minn.Stat. § 169.19, subd. 2 and careless driving under Minn.Stat. § 169.13, subd. 2. Initially, the prosecutor sought to tab charge the new offenses as misdemeanors, but later agreed to a petty misdemeanor designation when informed of the original offense's similar classification. Caswell's attorney requested written complaints on these new violations. After some discussion, the trial court suggested the prosecutor copy the original traffic citation and stated, "That's as formal as it gets for petty misdemeanors."

At trial, Weinberg testified he did not see Caswell until her car was in front of him and turning left into his lane. Weinberg stated he attempted to brake, but was unable to slow down in time to avoid a collision. Weinberg's wife, who was riding in his front passenger seat, testified consistently with his version of the events. Both Weinbergs stat-

ed Caswell did not use her turn signal. By contrast, Caswell testified she pulled into traffic when the next car was a sufficient distance behind her, activated her turn signal, and then proceeded to turn left. Caswell assumed the other driver noticed her signal, but realized he had not when he failed to slow down. The trial court determined the state proved all three charges, but sentenced Caswell only on the careless driving offense because the three violations all arose from a single behavioral incident.

## ISSUES

I. Is the evidence sufficient to establish that Caswell violated Minn.Stat. § 169.19, subd. 4?

II. Did the trial court abuse its discretion by permitting the state to add charges after Caswell's trial had begun?

## ANALYSIS

### I.

Evidence is sufficient to support a conviction if, given the facts in the record and any legitimate inferences to be drawn from those facts, the finder of fact could reasonably conclude the defendant committed the crimes charged. *State v. Wilson,* 535 N.W.2d 597, 605 (Minn.1995). We consider the evidence in the light most favorable to conviction, assuming the fact-finder believed the state's witnesses and disbelieved any contrary testimony. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

Caswell argues the evidence is insufficient to establish she illegally changed her course because an individual generally may make a u-turn over a double yellow line in the absence of a posted sign. *See* Minn. Stat. § 169.19, subd. 4 (1994) (requiring only that turns be made when it is reasonably safe to do so and after appropriately signalling the turn). While Caswell correctly interprets subdivision 4, the trial court clearly indicated the fact that she crossed a double yellow line played no role in its determination of guilt. Furthermore, the Weinbergs' testimony that Caswell pulled in front of them from the right without activating her blinker combined with the police officer's

conclusion, based on the position of the cars, that Caswell attempted an unsafe turn support the trial court's decision that Caswell violated Minn.Stat. § 169.19, subd. 4.

### II.

Caswell also argues the trial court violated Minn. R.Crim. P. 17.05 by allowing the state to amend its complaint after the commencement of her trial. Although she requested written complaints on the two new charges, Caswell never objected to the untimeliness of the amendment. Generally, we do not review issues concerning errors to which the defendant failed to object at trial. *State v. Landro,* 504 N.W.2d 741, 746 (Minn. 1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 380 (1994). However, because we conclude the trial court's plain error substantially affected Caswell's rights, we consider her argument. *See* Minn. R.Crim. P. 31.02 (permitting appellate courts to decide issues under these circumstances, even in the absence of a timely objection); *Landro,* 504 N.W.2d at 746 (same).

Prior to trial, a court is "relatively free" to permit amendments that charge additional offenses. *State v. Bluhm,* 460 N.W.2d 22, 24 (Minn.1990); *see also* Minn. R.Crim. P. 3.04, subd. 2 (allowing prosecutors to issue new complaints during pretrial proceedings). After trial has commenced and jeopardy has attached, however, a court may allow the amendment of a complaint only if no additional or different offense is charged and if the amendment does not prejudice substantial rights of the defendant. *See* Minn. R.Crim. P. 17.05 (allowing amendments under these conditions any time before verdict); *State v. Alexander,* 290 N.W.2d 745, 748 (Minn.1980) (interpreting this rule to apply only after trial has begun); *see also State v. Smith,* 313 N.W.2d 429, 430 (Minn. 1981) (stating additional or different offenses may not be added once jeopardy has attached); *cf. State v. Favre,* 428 N.W.2d 828, 831 (Minn.App.1988) (indicating courts have discretion to allow amendments according to the standards set forth in rule 17.05). In nonjury trials, jeopardy attaches when the witnesses are sworn and the court begins to

hear evidence. *See Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (stating jeopardy attaches when the court begins to hear evidence); *City of St. Paul v. Hurd,* 299 Minn. 51, 55, 216 N.W.2d 259, 262 (1974) (stating jeopardy attaches when the first evidence is presented); *see also United States v. Raymer,* 941 F.2d 1031, 1038 (10th Cir.1991) (stating jeopardy attaches when the first witness is sworn).

■ It is undisputed that the prosecutor moved to add charges after the witnesses were already sworn. Under these circumstances, the trial court clearly violated rule 17.05 by allowing the prosecutor to tab charge two new counts at that time. *See* Minn. R.Crim. P. 17.05 (permitting amendment only if it does not add charges); *see also Smith,* 313 N.W.2d at 430 (affirming a trial court's decision to allow an amendment before jury selection and concluding it neither charged additional or different offenses nor prejudiced the defendant). The state's argument that the prosecutor did not attempt to amend the complaint, but merely moved to charge further offenses, is without merit. The only complaint offered to Caswell on the new charges was a photocopy of the original citation. Furthermore, a prosecutor cannot sidestep the requirements of rule 17.05 simply by moving to charge additional violations, rather than by moving to amend the original complaint.

■ The state also argues Caswell did not experience any prejudice because it could have readily amended its complaint several minutes earlier (before the swearing of the witnesses). *See* Minn. R.Crim. P. 3.04, subd. 2 (allowing prosecutors to issue new complaints during pretrial proceedings); *Alexander,* 290 N.W.2d at 748 (stating rule 3.04 provides for "free amendment" before trial). However, a continuance may be granted when a prosecutor seeks to amend a complaint during pretrial proceedings. *See* Minn. R.Crim. P. 3.04, subd. 2 (allowing a continuance to permit the filing of a new complaint *provided* the prosecutor promptly moves for a continuance); *see also Bluhm,* 460 N.W.2d at 24 (acknowledging this rule permits amendment prior to trial if the trial

court allows any necessary continuance). If the trial court had permitted a continuance of the proceedings to allow the prosecutor to file a new complaint, a timely motion would not have resulted in a similar outcome as the state contends, but would have given Caswell an opportunity to prepare a defense to the additional charges.

We conclude the clear violation of rule 17.05 by the addition of two new offenses during trial substantially prejudiced Caswell's rights. Although the three statutes under which Caswell was charged require safe driving, each individual subdivision states different particular requirements. The original charge forbids turns "unless and until the movement can be made with reasonable safety after giving an appropriate signal." Minn.Stat. § 169.19, subd. 4. Subdivision 2 of that section specifically prohibits u-turns when they will interfere with other traffic. Minn.Stat. § 169.19, subd. 2 (1994). And under the careless driving statute, it is illegal to operate a vehicle "carelessly or heedlessly in disregard of the rights of others, or in a manner that endangers or is likely to endanger any property or any person." Minn.Stat. § 169.13, subd. 2 (1994). Caswell came to trial ready to show that she did not violate Minn.Stat. § 169.19, subd. 4 by illegally crossing a double yellow line as indicated by the police officer who issued her the citation. Caswell was unprepared to defend against charges that she interfered with traffic and drove so as to endanger property or people. *See Alexander,* 290 N.W.2d at 748 (indicating rule 17.05 also protects against adverse effects on the defense's trial tactics).

In addition, Caswell was sentenced on a careless driving conviction, which could have resulted in consequences different from those for a conviction under Minn.Stat. § 169.19, subd. 4. Had this amendment been made prior to trial, she may have decided not to waive her constitutional right to trial by jury. Thus, the amendment, by adding new charges with different elements after Caswell waived her right to a jury trial, is not the type of change allowed by rule 17.05. *Compare State v. Manley,* 353 N.W.2d 649, 652 (Minn.App.1984) (finding an amendment to

charge an offense that shifted the burden of production to the defendant "charged a different offense which substantially prejudiced the rights of appellant") *with State v. Miller,* 352 N.W.2d 524, 526 (Minn.App.1984) (finding an amendment that "merely restated with particularity the original complaint" did not violate this rule), *review denied* (Minn. Nov. 9, 1984). Furthermore, there is no evidence that the prosecutor had insufficient time to file the motion before trial and, thus, avoid the application of rule 17.05.

The state urges us to find no prejudice resulted because it often tab charges additional offenses on the day of trial for traffic violations. While this may be common practice, it does not render the procedure harmless and could suggest a certain vindictiveness on behalf of the state when the prosecutor charges the additional offenses only after defendants prove unwilling to plead guilty. *See State v. Pettee,* 538 N.W.2d 126, 133 (Minn.1995) (permitting a defendant to prove objectively that a prosecutor's charging decision resulted from a desire to punish the defendant for exercising a legal right), *cert. denied,* —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996).

Caswell's other arguments alleging prosecutorial misconduct, ineffective assistance of counsel, and the denial of her right to a formal complaint are based on the charging of the two additional offenses after the commencement of trial. Because we reverse the trial court's decision to permit amendment of the complaint, we need not address those issues.

## DECISION

The evidence is sufficient to support a conviction for illegally changing course under Minn.Stat. § 169.19, subd. 4. However, the trial court erred in granting the state's motion to amend its complaint after trial had commenced. A trial court may not permit an amendment at that time if it charges new or different offenses. The amended complaint substantially prejudiced Caswell's rights because the additional offenses contained different elements and subjected her to conviction and sentencing on a charge against

which she was not prepared to defend. We reverse the trial court's granting of this motion and remand for sentencing on the original illegal change of course charge.

**Affirmed in part, reversed in part, and remanded.**