******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ENRIQUE AYALA
(SC 19466)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Argued September 15, 2016—officially released February 7, 2017*

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, former state's attorney, and *Seth R. Garbarsky*, assistant state's attorney, for the appellant (state).

*Katherine C. Essington*, for the appellee (defendant).

*Opinion*

McDONALD, J. We consider in this appeal whether allowing the state to amend an information after the commencement of trial to charge additional offenses without good cause constitutes per se reversible error. The state appeals, upon our grant of certification, from the judgment of the Appellate Court reversing the judgment of conviction of the defendant, Enrique Ayala, of three counts of interfering with an officer in violation of General Statutes § 53a-167a. See *State* v. *Ayala*, 154 Conn. App. 631, 656, 106 A.3d 941 (2015). The state contends that, in the absence of prejudice, the trial court's decision to allow a midtrial amendment charging additional offenses was neither an abuse of discretion nor reversible error. We conclude that, although the trial court abused its discretion in allowing the state to amend the information without good cause to charge additional offenses, that impropriety would not require reversal of the defendant's conviction on the amended charges in the absence of prejudice. We further conclude, however, that the Appellate Court's judgment must be affirmed because the improper amendment was not harmless beyond a reasonable doubt under the circumstances of this case.

At trial, the state proffered testimony from three Meriden police officers and an emergency medical technician regarding the defendant's conduct at a motor vehicle stop and later in a holding cell at a police station that gave rise to the charges in this case.[1] On the basis of that evidence, the jury reasonably could have found the following facts.

On February 9, 2012, the defendant's girlfriend, Michelle Sofianos, drove the defendant home in a motor vehicle registered and insured in his name. Shortly after the defendant exited the vehicle, Sofianos made an illegal U-turn near the intersection of Orange and Hanover Streets in Meriden, which prompted Officer David Buck to initiate a traffic stop. Officer Margaret Smusz, who had been dispatched to the scene, arrived shortly thereafter and approached the passenger's side of the vehicle.

The defendant observed the stop and came back toward the vehicle. Smusz warned Buck that a male was approaching him from behind. Using profanity, the defendant asked why Sofianos was being detained. Buck then ordered the defendant to stand on the sidewalk, away from the vehicle. The defendant complied but continued to yell and swear at the officers, and appeared to be intoxicated.

After Sofianos identified the defendant for the officers, facts came to light that caused the officers to become concerned that he might be carrying a weapon. Smusz testified that she recognized the defendant's name as the name of the person she had previously

arrested for a narcotics violation, and that in the course of that arrest, the police found an unlicensed handgun in his vehicle. In addition, the officers observed that the defendant was wearing a leather vest bearing the insignia of a motorcycle club. Buck testified that during his police training he learned that members of outlaw motorcycle clubs often carried weapons. Consequently, Buck radioed for additional assistance and Officer Shane Phillips was dispatched to the scene.

Once Phillips arrived, he and Smusz approached the defendant and asked if he had any weapons on him, to which the defendant replied that he did not. Notwithstanding the defendant's answer, Phillips and Smusz instructed the defendant that they were going to pat him down for weapons. When Phillips started patting him down, the defendant "tensed up" and tried to "pull away." Phillips and Smusz immediately grabbed the defendant's arms and placed him on the hood of the defendant's vehicle. The defendant attempted to raise himself off the vehicle, but the officers pushed his head down, causing the defendant to bite his lip, drawing blood. Phillips handcuffed the defendant, arrested him for interfering, and conducted a pat-down search that did not yield a weapon. Phillips thereafter escorted the defendant to the police station on West Main Street.

At the police station, the defendant exited the cruiser and walked inside without incident. Upon entering the holding cell, Buck, Smusz, Phillips, and the desk sergeant made the defendant face the corner of the cell, with his legs spread apart, so they could remove his outer layers of clothing in accordance with standard procedures. The defendant was compliant until the officers tried to remove his motorcycle club vest. At that point, the defendant called the officers pigs and uttered profanity, stating: "[Y]ou're not taking my . . . colors." Nevertheless, Phillips began to take off the defendant's vest after Smusz removed his handcuffs. With his hands still behind his back, the defendant "tensed up," clenched down on the vest to prevent its removal, and brought his left arm forward. The officers perceived his actions as a threat and immediately drove the defendant forward into the concrete wall in the corner of the cell.

In order to resecure the handcuffs, Buck, Smusz, Phillips and the desk sergeant forced the defendant to the ground, facedown, and instructed him to place his arms behind his back. The defendant locked his arms under his chest and struggled with the officers until Buck used a Taser device to stun him, after which the officers were able to remove the vest and put the handcuffs back on. The officers summoned medical assistance after noticing that the defendant had sustained an injury to his forehead. The defendant resisted efforts by Smusz and Phillips to position him so that medical personnel could attend to him. Smusz testified that, in the course of thrashing his legs backward

toward the officers, the defendant kicked her in the thigh. Afterward, the defendant refused to cooperate with the booking process or answer questions for a suicide evaluation. As a result, the officers cut off his clothing, gave him a paper suit to wear, and placed him in a cell designated for suicide watch.

The defendant attempted to present a starkly different version of the events in his cross-examination of the state's witnesses and through his own testimony and that of Sofianos. The defendant and Sofianos testified that the defendant was neither belligerent nor intoxicated that evening; rather, the defendant wanted to help Sofianos locate the vehicle's registration and insurance information and he immediately complied with Buck's order to stand on the sidewalk. The defendant testified that once Smusz and Phillips arrived, they walked straight toward him and put him in handcuffs. Sofianos and the defendant testified that the defendant was not resisting during the ensuing patdown, but Phillips nevertheless slammed his face into the hood of the vehicle. According to the defendant, Phillips said that he should have known better than to approach a police officer from behind while wearing a motorcycle club vest.

The defendant maintained that he was compliant at the police station because he wanted to get the booking process over with in order to make bond that night. He denied calling the officers "pigs" or swearing at them. He claimed that he did not try to prevent the removal of his vest; rather, the combination of Phillips and Buck pulling him in opposite directions and Phillips kicking his feet into a wide stance caused him to lose his balance and forced him to move his hands forward to catch himself. The defendant denied struggling with the officers while he was on the ground, claiming that it was not possible for him to put his hands behind his back with the officers on top of him. Although the defendant admitted that he had refused medical treatment and asked to be left alone, he denied kicking Smusz.

In addition to these facts, the following procedural history gives rise to the issues before us on appeal. On the day that jury selection was due to commence, the state filed a long form information charging the defendant with one count of assault of a peace officer (Smusz) in violation of General Statutes § 53a-167c and three counts of interfering with an officer (Buck, Smusz, and Phillips) in violation of § 53a-167a. All of the offenses were alleged to have occurred at the intersection of Hanover and Orange Streets, the site of the motor vehicle stop.

On the third day of voir dire, the state requested permission to amend the information to change the location of the assault charge from the site of the motor vehicle stop to West Main Street, the location of the Meriden Police Department. The trial court granted per-

mission for the amendment, noting that it was not a "material change" and that the location of the alleged assault was "clear from the police report, so as not to be surpris[ing] or . . . prejudic[ial]." The defendant conceded that he was aware that the police station was the site of the alleged assault and did not object to the amendment. The trial court asked the state whether the location for the interference charges—Hanover and Orange Streets—was still correct, to which the prosecutor responded: "That's still accurate." The prosecutor reiterated the following morning that the location of the three counts of interference "remain[ed] unchanged."

On the third day of evidence, just before direct examination of the last witness for the state recommenced, defense counsel filed a request for a jury instruction explaining that the jury was not to consider "what interference may or may not have occurred in connection with the charge of assault on [Smusz] at the Meriden Police Department." Counsel expressed a concern that the "testimony about the defendant's cooperation or lack thereof while detained at the Meriden Police Department" might confuse the jury because the only charged conduct at the police station was the alleged assault. The state made no objection to this request on the record.

After the state completed its case-in-chief and defense counsel completed direct examination of the defendant, the prosecutor noted for the record that a charging conference had been held off the record, at which time the trial court granted the state permission to allege that the defendant's interference with the three officers constituted "a continuing course of conduct" during his entire encounter with them. The trial court noted that, although it initially had been reluctant to permit the state to pursue this theory, its review of the case law persuaded it that the state could assert a continuing course of conduct over the duration of the defendant's contact with law enforcement as a basis of an interference charge.

Before closing arguments, the state filed a second amended information and an amended request to charge. The second amended information maintained the three counts of interference but alleged in each count that the interference against each officer had occurred at the intersection of Hanover and Orange Streets and at the Meriden Police Department. The amended unanimity charge given by the trial court to the jury was substantially identical to that submitted by the state, and provided: "The state has alleged that the defendant has committed the offenses of interfering with an officer throughout the course of his contacts with police officers on February 9, 2012, both at the intersection of Hanover and Orange Streets and at the Meriden Police Department. You may find the defendant guilty of the offenses only if you all unanimously

agree on when and where the defendant committed the offenses. This means you may not find the defendant guilty unless you all agree that the state has proved beyond a reasonable doubt that the defendant committed the . . . offense or offenses at the intersection of Hanover and Orange Streets, or you all agree that the state has proved beyond a reasonable doubt that the defendant committed the offense or offenses at the Meriden Police Department.”

Defense counsel stated for the record that the second amended information was “an unfair surprise coming at the end of evidence or close to the end of evidence,” and “that it may have been possible to argue differently” based on the new interference charges.[2] The trial court rejected the defendant’s contention, concluding that, on the basis of the police report and the testimony elicited at trial, “there was no unfair surprise and . . . counsel clearly cross-examined with an eye toward being able to argue when there was interfering and when there was not interfering, both at the police department and . . . at the motor vehicle stop at Hanover and Orange Streets.” The court thereafter instructed the jury in accordance with the state’s unanimity charge. No interrogatories were submitted to the jury to ascertain its verdict with respect to the site of the alleged interferences.

The jury acquitted the defendant of the assault charge but found him guilty of the three counts of interfering with an officer. The court rendered judgment in accordance with the verdict and imposed an effective sentence of two years imprisonment, consecutive to a sentence that the defendant was serving in an unrelated case.

The defendant appealed from the judgment of conviction to the Appellate Court. The defendant’s principal claim on appeal was that the trial court had abused its discretion by permitting the state to amend the information in violation of his sixth amendment rights under the federal constitution[3] and his due process right to proper notice of the charges against him. *State* v. *Ayala*, supra, 154 Conn. App. 643. Although the defendant contended that he had been prejudiced by the late amendment, the Appellate Court did not reach that issue because it determined that the state’s failure to meet the first two of the three requirements for an amendment of the information after the commencement of trial under Practice Book § 36-18[4] rendered the trial court’s decision an abuse of discretion that required reversal of the judgment of conviction. Id., 644 n.17, 655–56.

The Appellate Court first concluded that the record reflected neither a finding by the trial court that there was good cause for the amendment after the commencement of trial nor any basis to support such a finding. Id., 644, 647–48. The Appellate Court observed that “the [trial] court made no finding that there was

new evidence or evidence that the state had not anticipated to warrant amending the information at that time." Id., 647. The Appellate Court rejected the state's argument that Practice Book § 36-18 permits a trial court to allow an amendment even in the absence of good cause. Id., 648–49.

The Appellate Court further concluded that, even if the record established good cause, which it did not, the trial court abused its discretion in allowing the second amendment because it alleged additional offenses, thereby violating another limitation under Practice Book § 36-18. Id., 650. The Appellate Court observed: "There are two types of amendments that can result in the charging of a different or additional offense. One type of amendment produces what is commonly described as a factually different offense in that it alters the facts alleged, but continues to allege a violation of the same substantive crime as the original pleading; the other type charges a legally separate offense. . . . The second amended long form information constitutes the addition of a crime on factually distinct grounds. In other words, the defendant was alleged to have interfered with the police officers, the substantive crime, at two separate locations, i.e., two factually different crimes." (Citations omitted.) Id., 652. The Appellate Court reasoned that, "[n]otwithstanding the state's attempt to conflate the traffic stop and police station conduct into one event, the evidence demonstrates that the charges of interference were based on two separate, distinct acts of alleged interference occurring at separate places, and separated by the transporting of the defendant from one location to another. See *United States* v. *Chappell*, 704 F.3d 551, 552 (8th Cir. 2013) (criminal offense is distinct crime when it occurs in different location and at different time)." *State* v. *Ayala*, supra, 154 Conn. App. 655. The Appellate Court questioned whether the state's continuing course of conduct theory was even cognizable in this context, but observed that such a theory was in any event inconsistent with the unanimity charge given to the jury. Id., 643 n.13. On the basis of the violations of § 36-18 that it identified, the Appellate Court reversed the judgment of conviction and remanded the case for a new trial. Id., 656.

We thereafter granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly reverse the defendant's conviction based upon its determination that the trial court had abused its discretion by permitting the state to amend its information after the start of the trial?" *State* v. *Ayala*, 316 Conn. 908, 111 A.3d 883 (2015). The state's principal contention is that a trial court cannot abuse its discretion in allowing an amendment to the information unless the amendment causes prejudice to the defendant's substantive right to notice of the charges against which he must defend, which the trial court concluded

did not exist in this case. The state further argues that, even if a trial court could abuse its discretion in allowing an amendment without good cause to charge additional offenses, the defendant would not be entitled to reversal of his conviction on the new charges without showing that the error was harmful. The state contends that the amendment did not impair the defendant's ability to present his defense and therefore he is not entitled to a new trial.

We agree with the state that it is important to distinguish between the trial court's obligations and the right to relief from trial court error, a distinction that has not always been made clear in appellate case law addressing Practice Book § 36-18. We disagree with the state, however, that the defendant is not entitled to a new trial. We conclude that reversal of the judgment was proper, although for slightly different reasons than those relied on by the Appellate Court.

I

We begin with the question of whether the Appellate Court properly determined that the trial court abused its discretion in allowing the state to amend the information. We underscore that the state does not challenge the Appellate Court's conclusions that the state lacked good cause for the amendment or that the amendment resulted in the inclusion of additional offenses. Instead, the state contends that, unless the amendment caused prejudice to the defendant, such factors do not result in an abuse of discretion in granting the amendment. We disagree.[5]

"Before the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § [36-17]. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § [36-18]." *State* v. *Tanzella*, 226 Conn. 601, 607, 628 A.2d 973 (1993). For purposes of Practice Book § 36-18, a trial begins with the commencement of voir dire. Id., 608.

Practice Book § 36-18 provides in relevant part: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. . . ." It is well settled that the state bears the burden of demonstrating that it has complied with the requirements of § 36-18 in seeking permission to amend the information. See *State* v. *Tanzella*, supra, 226 Conn. 614 ("[l]ike any other party petitioning the court, the state must demonstrate the basis for its request [to amend the information]"). A trial court's decision to allow the state to amend the information is reviewed for an abuse of discretion. See *State* v. *Ramos*, 176 Conn. 275, 276, 407 A.2d 952 (1978).

On its face, Practice Book § 36-18 states three predicates that the state must meet to obtain permission to amend the information: (1) good cause; (2) no additional or different offense is charged; and (3) no prejudice to the defendant's substantive rights. *State* v. *Petitpas*, 299 Conn. 99, 104 n.6, 6 A.3d 1159 (2010); *State* v. *Tanzella*, supra, 226 Conn. 614.

These requirements serve two purposes. First, they encourage the state to prepare its case carefully. *State* v. *Tanzella*, supra, 226 Conn. 614–15. Good cause in this context assumes some circumstance that the state could not have reasonably anticipated or safeguarded against before trial commenced. See *State* v. *Victor C.*, 145 Conn. App. 54, 65, 75 A.3d 48 ("To comply with the first prong of the test and meet its burden of showing good cause . . . the state must provide more than a bare assertion that it is merely conforming the charge to the evidence. . . . The state must demonstrate *why* the information necessitated substitution." [Citation omitted; emphasis in original; internal quotation marks omitted.]), cert. denied, 310 Conn. 933, 78 A.3d 859 (2013). Second, and more fundamentally, the requirements ensure that the defendant has adequate notice of the charges against which he must defend. *State* v. *Tanzella*, supra, 608; *State* v. *Jacobowitz*, 182 Conn. 585, 590, 438 A.2d 792 (1981), overruled in part on other grounds by *State* v. *Welch*, 224 Conn. 1, 4, 615 A.2d 505 (1992). As such, Practice Book § 36-18 is not only a rule of procedure, but a prophylactic rule designed to protect a criminal defendant's "constitutional right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial." (Internal quotation marks omitted.) *State* v. *Bergin*, 214 Conn. 657, 674, 574 A.2d 164 (1990); see also *State* v. *Morrill*, 197 Conn. 507, 551, 498 A.2d 76 (1985) ("[w]hen the state's pleadings have informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty" [internal quotation marks omitted]).

In light of the dual purposes served by the requirements of Practice Book § 36-18, we decline to interpret its provisions in a way that would disregard either the good cause requirement or the additional or different offense prohibition. We are bound to give effect to each requirement of § 36-18. See generally *State* v. *Strickland*, 243 Conn. 339, 347–48, 703 A.2d 109 (1997) ("our rules of practice should be construed harmoniously and not in a way that would render one provision superfluous as a result of the existence of another"). To hold, as the state urges, that prejudice is the only inquiry in determining whether a violation of § 36-18 has occurred

would effectively read the good cause requirement, the additional or different offense prohibition, and the conjunctive "and" preceding the element of prejudice out of the rule. If that was the intent of the drafters, there would have been no point to including the good cause shown and no additional or different offense charged language; "it would have been necessary to provide only that amendment would not be allowed if substantial rights of the defendant are not prejudiced." (Internal quotation marks omitted.) *United States* v. *Personal Finance Co. of New York*, 13 F.R.D. 306, 311 (S.D.N.Y. 1952); accord *Simon* v. *Government of the Virgin Islands*, 47 V.I. 3, 8 (2002), appeal dismissed in part and remanded in part on other grounds, 116 F. Supp. 3d 529 (D.V.I. 2015).

Despite this court's unambiguous statement in *State* v. *Tanzella*, supra, 226 Conn. 614, that there are three requirements that the prosecution must satisfy, the state has seized upon language in that case that it asserts effectively did away with the first two components of Practice Book § 36-18. The state first argues that satisfaction of the good cause requirement is not a necessary predicate to allowing an amendment to the information because this court observed in *Tanzella* that § 36-18 "permits amendments to an information after trial has commenced *provided 'no additional or different offense is charged and no substantive rights of the defendant would be prejudiced.'* " (Emphasis added.) Id., 607–608. Some Appellate Court decisions have since stated that the trial court's discretion pursuant to § 36-18 is "limited only by" the latter two requirements of the provision. See, e.g., *State* v. *Adams*, 38 Conn. App. 643, 649, 662 A.2d 1327, cert. denied, 235 Conn. 908, 665 A.2d 902 (1995). Our exclusive focus on those two requirements in *Tanzella*, however, is readily explained by the fact that the defendant in that case had effectively conceded good cause. See *State* v. *Tanzella*, supra, 608 n.8. Indeed, numerous Appellate Court decisions have properly recognized that the prosecution must establish good cause at trial. See, e.g., *State* v. *Victor C.*, supra, 145 Conn. App. 65–66 (assessing whether good cause was shown); *State* v. *Jordan*, 132 Conn. App. 817, 824–25, 33 A.3d 307 (same), cert. denied, 304 Conn. 909, 39 A.3d 1119 (2012); *State* v. *Grant*, 83 Conn. App. 90, 93–95, 98, 848 A.2d 549 (same), cert. denied, 270 Conn. 913, 853 A.2d 529 (2004); *State* v. *Wilson F.*, 77 Conn. App. 405, 413, 823 A.2d 406 (same), cert. denied, 265 Conn. 905, 831 A.2d 254 (2003).

The state similarly takes out of context another statement in *Tanzella* to support its contention that an abuse of discretion arises only from an amendment that impairs the defendant's substantive rights. In that case, we observed: "For purposes of [Practice Book § 36-18], the decisive question is whether the defendant was informed of the charges with sufficient precision to be able to prepare an adequate defense." *State* v. *Tanzella*,

supra, 226 Conn. 608. That statement was made, however, in the context of explaining why we declined to use a comparison of the elements of each of the offenses to determine whether the amended charges constituted additional or different offenses. See id.

Accordingly, in the present case, the trial court abused its discretion by allowing the state to amend the information in the absence of a showing, and finding, of good cause. As the Appellate Court properly observed, the trial court failed to make any finding regarding good cause. See *State* v. *Ayala*, supra, 154 Conn. App. 644, 647–48. Indeed, the failure to exercise discretion is an abuse in and of itself. See *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986) ("[w]here . . . the trial court is properly called upon to exercise its discretion, its failure to do so is error"). Moreover, the record reveals no basis upon which the trial court could have made a finding of good cause for the amendment,[6] especially in light of the prosecutor's repeated assurances, after amending the information to change the location of the assault, that the location of the interference was "still accurate" and "remain[ed] unchanged."[7] In addition, the state conceded at oral argument before this court that the instances of interference at the intersection of Hanover and Orange Streets and at the police station constituted "two distinct acts or transactions separated by time and location"; *State* v. *Ayala*, supra, 655; see also *State* v. *Tweedy*, 219 Conn. 489, 494, 594 A.2d 906 (1991); the basis for the Appellate Court's conclusion that the amendment resulted in additional offenses.[8] As such, the Appellate Court properly concluded that the trial court abused its discretion in allowing the amendment.

## II

The Appellate Court concluded that the trial court's abuse of discretion required reversal of the judgment. Indeed, the court concluded that it was unnecessary to reach the defendant's claim that he was prejudiced by the amendment. As such, the Appellate Court effectively determined that a violation of the good cause requirement and the additional or different offense prohibition is per se reversible error and, consequently, structural error. Although we disagree with that legal conclusion, we conclude that the Appellate Court's judgment should be affirmed on the ground that the state has failed to meet its burden of proving that the amendment was harmless beyond a reasonable doubt.

## A

It is well settled that "[n]ot every deviation from the specific requirements of a Practice Book rule necessitates reversal." *State* v. *Suggs*, 194 Conn. 223, 226–27, 478 A.2d 1008 (1984). "Ordinarily, our courts apply a harmless error analysis in determining whether a violation of a rule of practice amounts to reversible error."

*State* v. *Pare*, supra, 253 Conn. 636. To the extent that a failure to comply with a rule of practice rises to the level of a constitutional violation, "[t]he United States Supreme Court has recognized that 'most constitutional errors can be harmless.' " *State* v. *Anderson*, 255 Conn. 425, 444, 773 A.2d 287 (2001), quoting *Neder* v. *United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

"The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. . . . Accordingly, we forgo harmless error analysis *only in rare instances involving a structural defect* of constitutional magnitude." (Emphasis in original; internal quotation marks omitted.) *State* v. *Artis*, 314 Conn. 131, 149–50, 101 A.3d 915 (2014); see also *Rose* v. *Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) ("if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis").

"Structural defect cases defy analysis by harmless error standards because the 'entire conduct of the trial, from beginning to end, is obviously affected . . . .' *Arizona* v. *Fulminante*, [499 U.S. 279, 309–10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)]. These cases 'contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. [Id., 310]. Such errors infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.' . . . *Neder* v. *United States*, supra, 527 U.S. 8–9." (Citations omitted.) *State* v. *Anderson*, supra, 255 Conn. 445.

With these principles in mind, we turn to the rule of practice at issue. As reflected in our discussion in part I of this opinion, the good cause requirement in Practice Book § 36-18, standing alone, is not intended to vindicate any constitutional right; rather, its purpose is to encourage the state to diligently prepare its case. See *State* v. *Tanzella*, supra, 226 Conn. 614–15. As such, consistent with our harmless error jurisprudence for nonconstitutional claims, our appellate case law has never treated a lack of good cause, in and of itself, as reversible error. See, e.g., *State* v. *Carlos E.*, 158 Conn. App. 646, 653 n.4, 120 A.3d 1239 (considering whether defendant suffered prejudice as result of amendment despite state's failure to make any attempt to articulate

good cause and trial court's failure to make explicit finding on good cause), cert. denied, 319 Conn. 909, 125 A.3d 199 (2015); see also *State* v. *Petitpas*, supra, 299 Conn. 101, 103–104 (affirming judgment of conviction despite defendant's argument that state failed to show good cause for amending information because court was "unable to perceive how the defendant could have been prejudiced by an amendment that deprived the state of a means of proving the offense"). Thus, a trial court's abuse of discretion in allowing the state to amend the information midtrial without a showing of good cause, standing alone, would fall squarely within our jurisprudence requiring the defendant to show that the nonconstitutional error was harmful to reverse the judgment of conviction.[9] See *State* v. *Payne*, 303 Conn. 538, 553, 34 A.3d 370 (2012) ("[w]hen an error is not of constitutional magnitude, the defendant bears the burden of demonstrating that the error was harmful").

Whether there has been an abuse of discretion arising from a violation of the additional or different offense prohibition set forth in Practice Book § 36-18 presents a more difficult question. In our seminal case on this issue, *State* v. *Jacobowitz*, supra, 182 Conn. 590–93, this court reversed the defendant's judgment of conviction on the ground that the trial court improperly allowed the state to amend the information to add a different offense after it concluded its case-in-chief, without taking into consideration whether the amendment caused prejudice to the defendant. Some Appellate Court decisions rendered shortly after *Jacobowitz* followed this holding and concluded that an amendment of an information in violation of the additional or different offense prohibition made *during* presentation of the state's case-in-chief is, in and of itself, reversible error with respect to the new charge. See, e.g., *State* v. *Cole*, 8 Conn. App. 545, 552, 513 A.2d 752 (1986); *State* v. *Kitt*, 8 Conn. App. 478, 488–89, 513 A.2d 731, cert. denied, 202 Conn. 801, 518 A.2d 648 (1986).

Conversely, the most recent Appellate Court decision on this issue employed harmless error review after concluding that when the state amended the information at the close of its case-in-chief by substituting the original charge of burglary in the first degree with burglary in the second degree, that substitution constituted a different offense. *State* v. *Ramirez*, 94 Conn. App. 812, 816–17, 894 A.2d 1032, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006). The court observed that "the improper amendment of the information implicates the defendant's constitutional right to fair notice of the charges against him . . . [and, consequently] the state must prove such error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 819. The court determined that the error in that case was harmless beyond a reasonable doubt because "[t]he defense theory [of mistaken identity] . . . was not related to the elements of the crime as originally

charged or as amended. As a result, the amendment did not prejudice the defense because the effect of the amendment was logically distinct from the defense asserted." Id., 820.

We conclude that *Jacobowitz* should be overruled insofar as it suggests that any amendment to an information violating the additional or different offense prohibition results in per se reversible error. When *Jacobowitz* was decided, our harmless error jurisprudence, particularly with respect to constitutional error, was not yet well developed. Compare *State* v. *Cohane*, 193 Conn. 474, 485, 479 A.2d 763 ("[i]f error touches a less basic constitutional right, we sometimes apply the harmless error exception, but only sparingly, in a few, discrete circumstances" [internal quotation marks omitted]), cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), with *State* v. *Anderson*, supra, 255 Conn. 444 (acknowledging United States Supreme Court's recognition in its recent opinion, *Neder* v. *United States*, supra, 527 U.S. 8, that "most constitutional errors can be harmless" [internal quotation marks omitted]). Indeed, it was not until 1997, sixteen years after *Jacobowitz*, that the United States Supreme Court emphasized that structural error would be found in a "very limited class of cases . . . ." *Johnson* v. *United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997).

We recently overruled a case decided in the same year as *Jacobowitz* because that case rejected harmless error analysis in favor of a rule of per se reversibility when the state uses unreliable eyewitness identification evidence arising from an unnecessarily suggestive police procedure. See *State* v. *Artis*, supra, 314 Conn. 145–46. In so holding, we recognized that, since that case was decided, there had been substantial changes in the legal landscape regarding the application of harmless error analysis to constitutional violations. Id., 149. On that basis, among others, we agreed with the state "that the introduction of such [unreliable eyewitness] testimony in violation of a defendant's right to due process is not one of the rare instances of structural error in which the automatic reversal of a conviction is warranted." Id., 146. The Appellate Court's more recent decision in *Ramirez* applying harmless error analysis, therefore, is more consistent with these developments in our jurisprudence.

It may reasonably be presumed that an amendment to an information that charges an additional or different offense that is made after trial has commenced gives rise to prejudice in the preparation and the presentation of the defense. See *State* v. *Cole*, supra, 8 Conn. App. 551 (discussing effect on voir dire); *State* v. *Caswell*, 551 N.W.2d 252, 255 (Minn. App. 1996) (discussing effect on waiver of jury trial). Indeed, in many cases, prejudice may be self-evident. We are not persuaded, however,

that every amendment made after the commencement of trial charging an additional or different offense is necessarily prejudicial or is never amenable to such an inquiry. See *State* v. *Ramirez*, supra, 94 Conn. App. 816–20 (trial court's abuse of discretion in allowing amendment was harmless beyond reasonable doubt because defense of mistaken identity was not related to elements of either original or substituted charge). This court previously has declined to view the violation of other substantial constitutional rights as structural error, even where the error occurred at the beginning of trial and could have had an ongoing effect throughout the course of the proceedings. See, e.g., *State* v. *D'Antonio*, 274 Conn. 658, 690–91, 877 A.2d 696 (2005) (trial judge's failure to recuse himself from presiding over trial after having participated in unsuccessful plea bargaining efforts was not plain error requiring reversal); *State* v. *Washington*, 182 Conn. 419, 429, 438 A.2d 1144 (1980) (instruction given early in trial permitting jurors to discuss case before its submission to them was subject to harmless error review). We further observe that, although the different/additional offense prohibition is also found in the rules or statutes of many other jurisdictions,[10] some of these jurisdictions have declined to reverse a conviction on an improper amendment charging a different or additional offense unless there is prejudice to the defendant. See *Sutton* v. *United States*, 140 A.3d 1198, 1203 (D.C. App. 2016); *Commonwealth* v. *Brown*, 556 Pa. 131, 136, 727 A.2d 541 (1999); see also *McGahan* v. *State*, 606 P.2d 396, 397 (Alaska 1980) (applying harmless error review to improper amendment that went beyond form in violation of permissive statute).[11]

We are mindful that other jurisdictions view such amendments as inherently prejudicial and, thus, per se reversible error.[12] See, e.g., *Commonwealth* v. *Souza*, 42 Mass. App. 186, 192–93, 675 N.E.2d 432, review denied, 424 Mass. 1107, 678 N.E.2d 1334 (1997); *State* v. *Jackson*, 78 Ohio App. 3d 479, 483, 605 N.E.2d 426 (1992). Although we can understand why a presumption of prejudice logically is warranted, we cannot justify an irrebuttable presumption, irrespective of the timing of the amendment or the nature of the defense asserted. For example, an amendment made just after voir dire has commenced to charge an additional or different offense would violate Practice Book § 36-18. Yet, in the absence of any indication that the amendment rendered the defendant ill-equipped to defend against the new charge at trial or that he was hampered in his effective questioning of the venire panel; see *State* v. *Cole*, supra, 8 Conn. App. 551; such an impropriety does not "*necessarily* render [the] criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (Emphasis in original.) *Neder* v. *United States*, supra, 527 U.S. 9. To the extent that the defendant suggests that a bright line rule of reversibility would

further the public policy of forcing prosecutors to more carefully prepare their cases before the commencement of trial, we believe that the countervailing policy in favor of harmless error review outweighs those nonconstitutional public policy considerations. The underlying purpose of harmless error review is to preserve the fundamental aim of a criminal trial—the factual determination of guilt or innocence—from being subverted by the virtually inevitable presence of immaterial error. See *State* v. *Perkins*, 271 Conn. 218, 244–45, 856 A.2d 917 (2004).

In sum, although an amendment that includes an additional or different offense will necessarily impact a defendant's constitutional right to notice of the charges against him, a defendant is not entitled to a new trial if that defect did not impair his ability to prepare for trial or present his defense. Accordingly, we decline to extend the limited class of cases involving structural defects to the error at issue in the present case.

B

Finally, we turn to the question of whether the defendant suffered prejudice to warrant reversal of his judgment of conviction and a new trial on the interference charges. The state contends that it does not bear the burden of proving that the trial court's abuse of discretion was harmless beyond a reasonable doubt. We disagree and conclude that, given the nature and timing of the amendment, the state cannot meet this burden.

This court has observed that when the trial court has improperly allowed the state to amend an information to charge an additional or different offense, the defendant's "constitutional right to fair notice, prior to the commencement of trial, of the charges against which he must defend himself" is infringed. *State* v. *Jacobowitz*, supra, 182 Conn. 590; see also *State* v. *Welch*, supra, 224 Conn. 4 ("[w]hen the state amends an information after the commencement of trial to add a new count that is not a lesser included offense of any count with which the defendant has properly been charged, the state violates both Practice Book § [36-18] and the defendant's due process right to notice"); *In re Steven G.*, 210 Conn. 435, 441, 556 A.2d 131 (1989) ("a midtrial amendment to an information adding different charges in an adult criminal proceeding is violative of due process"). We are not persuaded by the state's contention that the defendant's right to fair notice was not impaired in the present case because he had actual notice of the officers' version of events reflecting the defendant's resistance during processing at the police station. Simply put, there is a significant difference between the defendant's general awareness of the substance of the officers' testimony and his awareness that that testimony is going to form the basis of charges against him. Defense counsel's request, prior to the amendment at issue, to preclude the jury's use of evidence regarding

the incident in the holding cell in considering the interference at the traffic stop belies the argument that the defendant had actual notice that he would be charged with interference at the police station.[13]

It is well settled that, when certain improprieties are of constitutional dimension, the burden falls on the state to establish that the impropriety was harmless beyond a reasonable doubt. See *State* v. *Cohane*, supra, 193 Conn. 484–85; accord *State* v. *Ramirez*, supra, 94 Conn. App. 819; *State* v. *Ignatowski*, 10 Conn. App. 709, 715, 525 A.2d 542, cert. denied, 204 Conn. 812, 528 A.2d 1157 (1987). The state contends that there was no prejudice to the defendant because, prior to the amendment, he presented a complete defense against the additional charges when cross-examining the officers and providing his own testimony. Specifically, the state contends that the defendant attempted to establish that he had not interfered, but rather had cooperated with the officers at the police station and that any actions of his to the contrary were not volitional (i.e., losing his balance). The state further contends that the defendant could have recalled the officers during the presentation of his own case to address any deficiencies in his cross-examination and points to his failure to do so or ask for a continuance as evidence that the defendant was not prejudiced by the amendment. We conclude that, even if the defendant had a full and fair opportunity to examine the officers in a manner that would support a defense against the additional interference charges, the state cannot overcome a more fundamental problem arising from the timing of the amendment.

As the defendant properly emphasizes, the state amended the information after defense counsel completed the defendant's direct examination and immediately before the state commenced its cross-examination of him. Accordingly, the amendment occurred after the defendant exercised his right to testify or to remain silent. It is axiomatic that criminal defendants have a fundamental constitutional right to testify on their own behalf or to decline to do so. See *Rock* v. *Arkansas*, 483 U.S. 44, 51–53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *Malloy* v. *Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). "Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right." *Brooks* v. *Tennessee*, 406 U.S. 605, 612, 92 S. Ct. 1891, 32 L. Ed. 2d 358 (1972); see also *Ferguson* v. *Georgia*, 365 U.S. 570, 602, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961) (Clark, J., concurring) (fourteenth amendment protects "the right of a criminal defendant to choose between silence and testifying in his own behalf").

"While the due process clause of the [f]ifth [a]mendment may be understood to grant the accused the right to testify, the if and when of whether the accused will testify is primarily a matter of trial strategy to be

decided between the defendant and his attorney." (Internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 45, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002). "[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify. The defendant can then make the choice of whether to take the stand with the advice of competent counsel. It is important to remember that while defense counsel serves as an advocate for the client, it is the client who is the master of his or her own defense. . . . *The wisdom or unwisdom of the defendant's choice does not diminish his right to make it.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Francis*, 317 Conn. 450, 461, 118 A.3d 529 (2015); see also *State* v. *Fisher*, 82 Conn. App. 412, 423–24, 844 A.2d 903 ("[t]he accused has the ultimate authority to make the fundamental decision to testify"), cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

In the present case, the defendant's decision to testify, and the scope of that testimony, was necessarily informed by the nature of the charges against him. Once he exercised his constitutional right to testify, he could not reconsider that decision. In the absence of any admission to the contrary, the state cannot prove that the defendant would have elected to testify even if he had timely notice of the additional interference charges. Indeed, before the defendant knew that he was being charged with interference at the police station, he admitted in his direct examination that he had refused medical treatment there, an admission that the jury might have viewed as bolstering the officers' testimony that the defendant had resisted every effort they had undertaken. Moreover, even in the absence of potentially damaging testimony, the state cannot meet its burden because the decision to testify need not be objectively reasonable. See *State* v. *Francis*, supra, 317 Conn. 461. Accordingly, the state has not satisfied its burden of proving beyond a reasonable doubt that the improper amendment did not prejudice the defendant's substantive rights.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, EVELEIGH and ROBINSON, Js., concurred.

* This case was originally argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Thereafter, Justice Zarella retired from this court and did not participate in the consideration of this decision.

[1] The state also proffered a videotape of the events at the police station. There was no videotape of the motor vehicle stop due to malfunctioning equipment in the police cruiser operated by the officer who initiated the stop. The defendant challenged on appeal the trial court's decision precluding him from proffering his version of the videotape in slow motion. The Appellate Court did not reach this issue, and we need not address the effect of this ruling in this certified appeal.

[2] The defendant has not raised, at trial or on appeal, any objection to the form of the second amended information as stating improper duplicitous grounds in each interference count. See *State* v. *Cofone*, 164 Conn. 162,

166–68, 319 A.2d 381 (1972); *State* v. *Saraceno*, 15 Conn. App. 222, 228–29, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988).

[3] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."

[4] Practice Book § 36-18 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

[5] In light of our conclusion that Practice Book § 36-18 is violated even without a showing of prejudice, we need not reach the defendant's alternative ground for affirmance that the trial court abused its discretion in allowing the amendment because it improperly concluded that the defendant's substantial rights were not prejudiced by the amendment.

[6] The dissent asserts, without citing any authority, that good cause exists when an amendment conforms the charge to the evidence. As an initial matter, the state never argued or represented to the trial court that the amendment was necessary to conform the information to the proof. More significantly, there is a long line of Appellate Court cases plainly to the contrary. See, e.g., *State* v. *Enrique F.*, 146 Conn. App. 820, 824, 79 A.3d 140 (2013), cert. denied, 311 Conn. 903, 83 A.3d 350 (2014); *State* v. *Victor C.*, supra, 145 Conn. App. 65; *State* v. *Jordan*, supra, 132 Conn. App. 825; *State* v. *Grant*, supra, 83 Conn. App. 93–95, 98; *State* v. *Wilson F.*, supra, 77 Conn. App. 413.

[7] To the extent the state summarily asserts in the course of its prejudice argument that good cause may have been implicit in the trial court's conclusion that defense counsel examined the defendant and the state's witnesses "with an eye toward" defending against interference at the police station, that argument is patently without merit. The existence of good cause is not examined in relation to the adequacy of the defense asserted, but the necessity for the amendment.

[8] Undeterred by the state's decision not to challenge the Appellate Court's conclusion that the amendment charged additional offenses, and its concession of that point at oral argument, the dissent cherry picks facts out of the record in order to mount its own challenge to that conclusion, namely, that the relatively short time and distance between the two instances of alleged interference establish a "unity" in the defendant's conduct such that it could be characterized as "ongoing." It is unsurprising that the state has not cited to these facts because they are entirely irrelevant in light of undisputed and uncontestable evidence that the defendant was fully cooperative from the time he was placed in the police cruiser until he was brought into the police station and efforts were made to remove his vest. It was on the basis of that attenuation evidence that the Appellate Court based its unchallenged conclusion that the charges of interference were based on separate, distinct acts of alleged interference.

[9] Although we conclude that a violation of the good cause requirement is not sufficient, in and of itself, to mandate reversal of a judgment of conviction, we fully expect our trial courts to preclude an amendment in the absence of a showing of good cause now that we have stated unequivocally that to do otherwise would be an abuse of discretion. Indeed, in a case like the present one, we would fully expect the trial court not only to require such a showing, but also to inquire why the state had failed to make its request at the earliest juncture possible. We are particularly troubled by the state's belated request in light of its first amendment to the information on the assault charge, its assurances that this amended information reflected the proper location for the interference charges, and its silence in the face of a request by defense counsel seeking a clarifying instruction to limit the jury's use of evidence regarding the incident in the holding cell in determining whether the defendant interfered with the officers.

[10] Although it appears that almost every jurisdiction imposes by rule or statute similar requirements to those in the second and third requirements of Practice Book § 36-18, Connecticut appears to be alone in including a good cause requirement explicitly in our law.

[11] These cases do not clearly state which party bears the burden or by what standard of proof.

[12] A few other jurisdictions require reversal on different grounds, namely, that such amendments violate certain procedural or jurisdictional prerequisites. See, e.g., *State* v. *Colwell*, 124 Idaho 560, 566, 861 P.2d 1225 (1993)

("any amendment which charges the accused with a crime of greater degree or a different nature than that for which the accused was bound over for trial by the committing magistrate is barred by the Idaho [c]onstitution" [emphasis omitted]); *State* v. *McKeehan*, 894 S.W.2d 216, 223 (Mo. App. 1995) (amendment that charges new or different offense violates permissive statute and deprives defendant of constitutional and statutory right to preliminary hearing on new charge). This prohibition on broadening an information beyond that which was authorized by the authority prescribed by law is the traditional justification for the common-law rule against the amendment of an indictment. See *Russell* v. *United States*, 369 U.S. 749, 770, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962) ("an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form"); accord *Stirone* v. *United States*, 361 U.S. 212, 215–16, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). No issue has been raised in the present case that any procedural barrier existed to amending the information other than compliance with Practice Book § 36-18.

[13] The dissent points to the charge of assault at the police station and the defendant's request for an instruction that the jury could not consider his conduct at the police station to support the interference charge as evidence that the defendant was on notice that the state was advancing the theory that the defendant had committed interference at the police station. The dissent apparently deems irrelevant the difference between having notice of facts to be put in evidence and having notice of the legal significance of those facts, as well as how that difference could bear on a defendant's decision whether to testify. Insofar as intent to interfere is an element of the charge of assault, the state was required to prove that the defendant had such intent *when he kicked (assaulted) Smusz*. Although the assault charge provided notice that conduct preceding the alleged assault could be relevant to the defendant's intent when he purportedly kicked Smusz, it did not give the defendant notice that such evidence would be used as a basis for independent criminal liability. With respect to the defendant's requested limiting instruction, the dissent ignores the context in which that request was made, namely, the defendant's justifiable reliance on the state's previous two unequivocal affirmations that the information properly limited the interference charge to the site of the vehicle stop.